NOT DESIGNATED FOR PUBLICATION

No. 113,125

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DONALD D. ROBINSON,
*Appellant*.


MEMORANDUM OPINION

Appeal from Cherokee District Court; ROBERT J. FLEMING, judge. Opinion filed April 8, 2016. Affirmed.

*Meryl Carver-Allmond*, of Capital Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, for appellee.

Before MALONE, C.J., MCANANY and POWELL, JJ.

*Per Curiam*: Donald D. Robinson appeals his convictions of two counts of criminal threat. Robinson claims the district court erred when it provided a unanimity instruction that applied only to the charged offense of aggravated criminal threat and not to the lesser offense of criminal threat of which he ultimately was convicted. He also claims the district court erred when it declined to instruct the jury that a criminal threat must be more than a mere political statement or idle talk. Finding no reversible error in the jury instructions given by the district court, we affirm Robinson's convictions.

1

FACTUAL AND PROCEDURAL BACKGROUND

During the summer of 2012, Robinson and his wife of over 40 years, Debra, attended marriage counseling at Spring River Mental Health Center (Spring River) in Riverton, Kansas. The counseling was unsuccessful, and in September Debra informed Robinson that she wanted a divorce. Robinson did not take this news very well.

On September 10, 2012, Robinson went to Spring River and spoke with Kathi Gale, the clinic's compliance officer. Robinson told Gale that he wanted to file a complaint against Sandra Main, the therapist who provided counseling to the Robinsons, for breaching patient confidentiality. In discussing that complaint, Robinson brought up the subject of mass shootings like Gabby Giffords, Virginia Tech, and the Colorado movie theater. He said he understood how "someone could be so mad and upset that they just take a gun and take care of business." Robinson said that he had guns and he knew how to use them. When Gale asked Robinson if he was making a threat, he responded, "Oh, no, I'm not making any threats." Later on, when talking to Debra at their home, Robinson said that he blamed Main for Debra's decision to divorce. Robinson told Debra that if he saw Main on the street, he would run her over with his vehicle.

On September 12, 2012, Robinson's son and daughter-in-law, Carmella Mangile, brought some clothes and cigarettes to Robinson. Mangile overheard Robinson tell his son that Robinson and Debra would "both be dead" before he gave Debra a divorce. Mangile communicated this threat to Debra.

The next day, September 13, 2012, Debra was at a scheduled appointment with Main when she received a phone call from Robinson. Robinson told Debra that he would kill her before they would get divorced and that he would take their grandchildren and make sure no one ever saw them again. Based on this statement, Debra called the

Riverton school where one of grandchildren was attending, and the school was locked down due to the perceived threat.

On September 13, 2012, the State charged Robinson with two counts of aggravated criminal threat and one count of criminal threat. After various amendments, the charges were as follows:

> Count 1, Aggravated Criminal Threat: Robinson's September 13, 2012, statement to Debra over the phone that he would kill her before he would allow a divorce and that she would never see the grandchildren again, which caused the Riverton school to be locked down.
>
> Count 2, Aggravated Criminal Threat: Either (a) Robinson's September 10, 2012, statement to Debra that he would "run down" Main with his vehicle or (b) Robinson's September 10, 2012, statement to Gale that he understood why mass shootings happen, both or either of which caused Spring River to be locked down.
>
> Count 3, Criminal Threat: Robinson's September 12, 2012, statement to Mangile that Robinson and Debra would both be dead before Robinson gave Debra a divorce.

A jury trial commenced on June 24, 2014. At trial, Debra, Main, Gale, Mangile, and other witnesses testified for the State. Robinson did not testify. In closing argument, Robinson's counsel attacked the credibility of the State's witnesses. Counsel argued that Robinson's statements did not constitute threats and that the lockdown of the clinic and the school was unnecessary. The district court included a multiple acts unanimity instruction for Count 2. The district court provided the statutory definition of the term "threat," but the district court declined Robinson's request to instruct the jury that idle talk or a political statement could not constitute a threat.

The jury acquitted Robinson of Count 1, convicted him of the lesser offense of criminal threat on Count 2, and convicted him of criminal threat on Count 3. On August

3

28, 2014, the district court sentenced Robinson to 18 months' imprisonment but granted him probation for 12 months. Robinson timely appealed his convictions.

MULTIPLE ACTS UNANIMITY INSTRUCTION

Robinson first claims the district court erred when it provided a unanimity instruction on Count 2 that applied only to the charged offense of aggravated criminal threat and not to the lesser offense of criminal threat. Because the instruction did not cover the crime for which Robinson was actually convicted, he argues that his conviction on Count 2 must be reversed. The State concedes that the failure to provide a unanimity instruction for the lesser offense of criminal threat in Count 2 is reversible error. Despite the State's concession, we will review Robinson's claim employing the appropriate standard of review. See *State v. Gayden*, 259 Kan. 69, 85, 910 P.2d 826 (1996) (finding that appellate court is not bound by State's concession); *State v. Benoit*, 21 Kan. App. 2d 184, 196, 898 P.2d 653 (1995) (same).

Robinson did not object to the unanimity instruction provided by the district court for Count 2. A party cannot claim error for the district court's giving or failing to give a jury instruction unless (1) the party objects before the jury retires, stating distinctly the matter to which the party objects and the grounds for the objection; or (2) the instruction or the failure to give the instruction is clearly erroneous. K.S.A. 2015 Supp. 22-3414(3); *State v. Smyser*, 297 Kan. 199, 204, 299 P.3d 309 (2013). The appellate court uses a two-step process in determining whether the challenged instruction was clearly erroneous. First, the court must consider whether there was any error at all by considering whether the instruction at issue was both legally and factually appropriate, employing an unlimited review of the entire record; (2) if the court finds error, it must assess whether it is firmly convinced the jury would have reached a different verdict without the error. *State v. Clay*, 300 Kan. 401, 408, 329 P.3d 484, *cert. denied* 135 S. Ct. 728 (2014).

When a defendant asserts that his or her right to a unanimous jury verdict has been violated, the appellate court must first determine whether the case is a multiple acts case. *State v. Santos-Vega*, 299 Kan. 11, 18, 321 P.3d 1 (2014). This is a question of law over which the appellate court exercises unlimited review. 299 Kan. at 18. Second, if the appellate court determines the case is a multiple acts case, it must then determine whether error occurred, either because the State did not inform the jury which act to rely on to support the charge or the district court failed to instruct the jury that it must agree on the specific criminal act that supports the conviction. 299 Kan. at 18. Finally, if error has occurred, the appellate court must determine whether the error was harmless or warrants reversal. 299 Kan. at 18. In making this determination, if the defendant did not request a unanimity instruction or object to the lack of a unanimity instruction, the clearly erroneous standard from K.S.A. 2015 Supp. 22-3414(3) applies. 299 Kan. at 18.

Robinson's case was a multiple acts case because there was evidence of more than one threat to support aggravated criminal threat or criminal threat in Count 2. There was error because the State did not make an election as to which act it was relying on to support the charge. Likewise, the district court did not give a proper unanimity instruction covering both the charged offense of aggravated criminal threat and the lesser offense of criminal threat. The district court instructed the jury as follows: "In Count 2 the State claims distinct multiple acts which each could separately constitute the crime of aggravated criminal threat. In order for the defendant to be found guilty of aggravated criminal threat, you must unanimously agree upon the same underlying act." As Robinson now argues on appeal, the district court should have instructed the jury that in order to find Robinson guilty of aggravated criminal threat *or the lesser offense of criminal threat*, the jury must unanimously agree on the same underlying act.

However, because Robinson did not object to the unanimity instruction given by the district court, we should reverse his conviction of criminal threat only if the instruction given by the district court was clearly erroneous. *Santos-Vega*, 299 Kan. at 18.

5

In evaluating whether an instruction rises to the level of clear error, the issue of "[r]eversibility is subject to unlimited review and is based on the entire record. The party claiming error in the instructions has the burden to prove the degree of prejudice necessary for reversal." *State v. Betancourt,* 299 Kan. 131, 135, 322 P.3d 353 (2014). The "clearly erroneous" principle is not a standard of review, *i.e.*, a framework for determining whether error occurred. Instead, it supplies a basis for determining if an error requires reversal of a conviction. *State v. Lewis*, 299 Kan. 828, 856, 326 P.3d 387 (2014).

Here, the district court instructed the jury that it must agree on the same underlying act to find Robinson guilty of aggravated criminal threat as alleged in Count 2. The difference between aggravated criminal threat and criminal threat in Count 2 is whether the threat caused a lockdown of the mental health clinic. The fact that the jury found Robinson guilty of the lesser offense of criminal threat in Count 2 means there must have been some reasonable doubt about whether Robinson's threat caused a lockdown of the clinic. However, there is nothing in the record to indicate that the jury was not unanimous on the underlying threat supporting Count 2. There was substantial uncontroverted evidence supporting both threats that Robinson made on September 10, 2012, *i.e.*, that he understood why mass shootings happen and that he would "run down" Main if he ever saw her on the street.

In his brief on appeal, Robinson argues that the multiple acts error cannot be harmless because he did not present a unified defense at trial. We disagree. Robinson did not testify at trial. In closing argument, he basically presented a unified defense to the charges by attacking the credibility of the witnesses and arguing only that his statements should not have been interpreted as threats. Robinson also argued that his statements should not have caused a lockdown of the mental health clinic, an argument that at least some of the jurors must have found persuasive.

6

The burden is on Robinson to establish clear error necessary for the reversal of his conviction. See *Betancourt*, 299 Kan. at 135. The district court gave the jury a unanimity instruction on aggravated criminal threat as alleged in Count 2, but it erred because the instruction failed to cover the lesser offense of criminal threat. Based upon our review of the entire record, we are not firmly convinced that the jury would have reached a different verdict on Count 2 without the error. See *Clay*, 300 Kan. at 408. Thus, we reject Robinson's claim that his conviction of criminal threat in Count 2 must be reversed.

DEFINITION OF THREAT

Next, Robinson claims the district court erred when it declined to instruct the jury that a criminal threat must be more than mere political statement or idle talk. Robinson argues that such a definition would have been legally and factually appropriate under the circumstances of his case. The State responds that Robinson's requested instruction was unnecessary because the jury was instructed on the statutory definition of the term "threat." The State argues that the jury was instructed that a threat must be made with the intent to place another person in fear and if it had been a mere political statement or idle talk, it necessarily would not have been made with the intent to place another person in fear.

Our standard of review for a claimed instructional error is as follows:

"'(1)First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert.*

7

*denied* 132 S. Ct. 1594 (2012).' [Citation omitted.]" *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 (2015).

As for the definition of the term "threat," the district court instructed the jury as follows:

> "As used in these instructions, the term 'threat' means a communicated intent to inflict physical or other harm on any person or on property.
> "A 'threat' need not be in any particular form or in any particular words, and it may be made by innuendo or suggestion, and need not be made directly to the intended victim."

The first sentence of the district court's instruction is the statutory definition of the term "threat." See K.S.A. 2015 Supp. 21-5111(ff). Robinson requested that the district court also instruct the jury that "[t]he utterance must be more than mere political statement or idle talk; proper test to determine whether a statement is a threat is objective, not subjective, *i.e.*, that of a reasonable person." This language comes from *State v. Phelps*, 266 Kan. 185, 196, 967 P.2d 304 (1998). The district court did not directly rule on Robinson's requested language, but it was not included in the final instructions.

Although the district court could have included the language requested by Robinson, it was not error for the district court to decline to do so. The district court gave the jury the statutory definition of the term "threat" found at K.S.A. 2015 Supp. 21-5111(ff). The definition of the term "threat" provided by the district court was broader than the language from the *Phelps* case. Based on the definition of threat given by the district court, if the jury believed that Robinson was only engaging in mere political discussion or idle talk, Robinson would not have had the necessary intent to make a criminal threat and the jury would have found him not guilty. The definition of the term "threat" provided by the district court was legally and factually appropriate, and the district court did not err in denying Robinson's requested modification of the instruction.

8

Affirmed.